UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>                      Plaintiff,<br><br>v.<br><br>GOTHAM MANAGEMENT, LLC, a New York corporation; and DOES 1 through 10,<br><br>                      Defendant. | Case No.: 16cv673 NLS (JMA)<br><br>**ORDER:**<br><br>**(1) GRANTING PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION TO COMPEL LOSS OF REVENUE RECORDS, FINANCIAL RECORDS, AND RECORDS DEMONSTRATING COSTS INCURRED TO DATE; and**<br><br>**(2) EXTENDING CERTAIN SCHEDULING ORDER DEADLINES.**<br><br>[Dkt. No. 35] |
| GOTHAM MANAGEMENT, LLC, a New York corporation,<br><br>                      Counterclaimant,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>                      Counterdefendant. | |

**Relevant Background.**

Plaintiff Philadelphia Indemnity Insurance Company (Philadelphia) filed this declaratory relief action regarding an insurance claim. Philadelphia provided a "Commercial Lines" policy for defendant insured Gotham Management, LLC, doing business as the Keating Hotel (Gotham). Compl. ¶¶ 5-6. In the underlying insurance claim, Gotham suffered extensive water damage due to an intoxicated guest passing out in the shower and allowing water to eventually overflow into several rooms at the hotel. Compl. ¶ 7. In response to this declaratory relief action, Gotham filed a bad faith insurance counterclaim.

On March 30, 2014—the same day as the suffered water loss—Gotham submitted a claim to Philadelphia for the loss. Compl. ¶ 8. Gotham believes that by April 23, 2014, Philadelphia's independent adjuster estimated the loss to be worth $480,000, even though its adjuster communicated to Gotham that the loss was valued at only $250,000. Losh Decl. ¶ 5.[1] Philadelphia sent Gotham a check for $100,000 on May 27, 2014. Losh Decl. ¶ 5. As the parties could not agree on the amount of the loss, they submitted the matter for an appraisal. Compl. ¶ 10. The first partial appraisal award was issued on June 17, 2015, approximately 15 months after the loss. Compl. ¶ 11. This first appraisal determined values for the building repairs and business personal property, as well as the lost business income and sustained extra expense damages. Miglietta Decl. ¶ 4. It left open for future evaluation the value of the following items: the hallway carpets; the point of sale unit; the telephone systems; and the alarm, sound and lighting systems in the hotel bar. Compl. ¶ 11; Losh Decl. ¶ 9.

A second appraisal award issued on October 19, 2015 and covered the alarm system, and the sound and lighting systems in the night club or lounge area. Miglietta

---

[1] Philadelphia filed an objection to this paragraph of the declaration. The court does not rely on this evidence but refers to it to provide context to the dispute.

Decl. ¶ 5. Philadelphia ultimately paid the Gotham $547,834.98 for the water loss. Miglietta Decl. ¶ 6.

By filing this declaratory relief action Philadelphia asks the court to declare that it owes no extra-contractual damages. In the bad faith counterclaim, Gotham seeks these extra-contractual damages:

- $323,000 in lost revenue for the basement nightclub bar and restaurant.
- $200,000 in lost revenue for the hotel due to inability to host special events.
- $93,000 in depreciation holdback.
- $260,000 in lost revenue for the hotel for 19 months.
- $19,000 for extra laundry expense.
- $45,000 for phone replacement system.
- $80,000 in appraisal, attorney and public adjusting fees.

Counterclaim ¶ 30.

Philadelphia served document requests and noticed the deposition of Edward Kaen, owner of Gotham and manager of the Keating hotel. In the document requests and deposition notice they asked for Gotham's financial statements that would show support for its extra-contractual damages claims. Miglietta Decl. ¶ 11. Mr. Kaen appeared for his deposition but did not produce any documents. Miglietta Decl. ¶ 13. During the deposition he refused to answer questions regarding the possible tenants and future plans for the basement area. Miglietta Decl. ¶¶ 13-14; Ex. H.

After a meet and confer and production of supplemental Rule 26 disclosures and responses to the discovery, Gotham did not produce documents to support its claims of extra-contractual damages. Miglietta Decl. ¶ 16. On April 13, 2017, Philadelphia sent Gotham its draft of a joint discovery motion on this issue and asked Gotham to provide its insert. Gotham never responded regarding the joint motion, in violation of this chambers' rules. Philadelphia was then required to file a fully noticed motion with a 28-day briefing schedule.

By way of this motion Philadelphia seeks to compel the production of all documents relating to the revenue of the basement and lounge area and its tenants; related financial documents such as cash flow statements, bank deposits, receipts, invoices, registers, tax records, balance sheets, and statements; documents reflecting profitability for fiscal years 2013-2015 and costs of repairs; and a continued deposition of Mr. Kaen.

**Legal Standard.**

Parties can obtain discovery of non-privileged information so long as it

> is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Discoverable information need not be admissible. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D.Cal.2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

**Discussion.**

The basis for Gotham's extra-contractual damages bad faith counterclaim is Philadelphia's alleged delay in payment and undervaluing of the loss. Counterclaim ¶¶ 14-15, 36-50. Gotham objects to financial discovery regarding its extra-contractual damages and says that Philadelphia already has this information from the appraisal awards. It argues that the damage values for bad faith were already determined by the appraisers in the underlying contractual award, and the parties are now bound to those numbers. Losh Decl. ¶ 14. Those numbers include $17,000.00 monthly loss in rental

4

income from the basement nightclub bar and restaurant; $13,697.89 monthly loss in hotel revenue; and $1,000.00 monthly loss in laundry costs. Losh Decl. ¶ 8. It seeks these monthly values for the 19-month period running from the date of loss (March 31, 2014) through the payment of the second appraisal award (October 21, 2015). Losh Decl. ¶ 13. Gotham further argues that because these items were decided in an appraisal, and an appraisal regarding an insurance policy is a form of arbitration, the appraisal award is not subject to judicial review. Opp'n, p.10 (citations omitted).

Philadelphia counters that the appraisal award for the insurance contract did not set the rate for any extra-contractual damages. It also argues that Gotham may not be able to prove proximate causation between the water loss and its claimed loss of revenue of the basement lounge area for the 19 months because the basement lounge area has remained unoccupied for nearly two years after payments were made. Reply, p.3.

Bath faith is not covered under the original insurance contract but rather is a separate tort claim:

> "The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. … To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests. When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort."

*Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 720 (2007). In the bad faith counterclaim Gotham seeks "special, general and consequential damages" that were caused by the "proximate and legal result of the aforementioned wrongful conduct of Philadelphia." Compl. ¶ 49.

In its bad faith claim Gotham must show that the alleged undervaluing and delayed payment by Philadelphia proximately caused it to lose out on monthly rental income. Philadelphia has a right to conduct discovery on Gotham's extra-contractual damages and proximate causation, as this information is relevant to Gotham's bad faith claim and

5

Philadelphia's defenses to it, and is proportional to the needs of the case. Further, Gotham should have relatively easy access to this information and it should not be burdensome to produce.

Gotham is still free to argue on the merits that the values from the appraisals should apply to this case. But the court denies Gotham's objections to the requested financial discovery as to extra-contractual damages because it fails to carry its "heavy burden" to show why the discovery should be denied under Rule 26(b)(1). *See Blankenship*, 519 F.2d at 429.

**Order.**

For good cause shown, the court **ORDERS** that Gotham produce to Philadelphia, by **June 5, 2017**, all of the following documents:

1. All documents tracking and reflecting its receipt and expenditure of each of the payments comprising the $547,834.98 amount previously paid by Philadelphia to Gotham, including documents reflecting receipt and deposit of each payment by Philadelphia, and all documents reflecting expenditures of such payments including invoices, receipts, cancelled checks, credit card statements, and registers.

2. All documents supporting Gotham's claim for the withheld depreciation, including documents reflecting costs incurred to date by Gotham for repairs to the Keating Hotel as a result of the subject water loss, including invoices, receipts, cancelled checks, credit card statements and registers.

3. All records supporting Gotham's loss of revenue claim due to the water damage to the Keating Hotel guest rooms including the occupancy records of the various rooms from January 1, 2013 to the present.

4. All records supporting Gotham's loss of revenue due to the water damage to the lounge/basement area including documents reflecting revenue derived from the lease of the lounge basement area from January 1, 2010 to the date of loss or March 30, 2014, all lease agreements from January 1, 2010 to the present, all documents reflecting attempts to lease the lounge/basement area, including emails, memoranda of

understanding, or other communications from the date of loss to the present.

5. All records supporting Gotham's loss of revenue due to the water damage to Café 21 including all documents reflecting revenue derived from the lease of the restaurant area and portions of the basement provided for Café 21's use from the date of loss or March 30, 2014 to the present, including all agreements relating to the lease of such restaurant premises, concessions provided, lease payments, lease payment receipts, and lease payment deposits.

6. Gotham must produce all documents, including cancelled checks, wire transfer withdrawal slips, and registers supporting its claim for attorney's fees, public adjuster fees, and appraiser fees.

7. Any and all financial records for the fiscal years of 2013-2015 consisting of the following: quarterly and yearend balance sheets, income statements, cash flow statements, bank statements, bank deposits, receipts, invoices, registers, and tax records.

In light of the foregoing, the court **FURTHER ORDERS**:

8. Philadelphia must amend its expert disclosures in light of Gotham's additional document production by **June 26, 2017**.

9. If Philadelphia seeks a continued deposition of Mr. Kaen regarding the forthcoming documents, they must conduct that deposition by **June 26, 2017**.

10. All expert discovery must be completed by all parties by **July 17, 2017**. The parties must comply with the same procedures set forth in the paragraph governing fact discovery.

11. All other pretrial motions including those addressing Daubert issues must be filed by **August 3, 2017**.

///
///
///
///
///

12. All non-conflicting provisions in the court's July 29, 2016 and April 4, 2017 Scheduling Orders remain in effect.

**IT IS SO ORDERED.**

Dated: May 23, 2017

*Nita L. Stormes*
Hon. Nita L. Stormes
United States Magistrate Judge